**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| DAVID CARTER, CLAYTON GRAHAM, JR., and MITCHELL WEBSTER, | : : : : |
| Plaintiffs, | : : |
| v. | : CASE NO.: 5:12-CV-209 (LJA) : |
| BUTTS COUNTY, GEORGIA, SHERIFF GENE POPE, Individually and in his Official Capacity, TIMOTHY FILBECK, Individually and in his Official Capacity, | : : : : : |
| Defendants. | : : |

## ORDER

Before the Court is Plaintiffs' Motion for Sanctions. (Doc. 25.) For the following reasons, Plaintiffs' Motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

The facts of this case are fully set forth in the Court's June 2, 2015 Order (Doc. 75) and need not be fully recounted herein. In short, this action concerns the alleged unlawful arrest of Plaintiffs as they were cleaning out the foreclosed home of Defendant Filbeck, a lieutenant in the Butts County Sheriff's Department, on February 22, 2011. At that time, Plaintiffs were employed by MD Maintenance ("MDM"), who had been hired by Ocwen Loan Servicing LLC ("Ocwen"). Ocwen foreclosed on Defendant Filbeck's property (the "Property") on January 4, 2011. Although Defendant Filbeck vacated the Property in November of 2010, he left several of his possessions at the Property.

Following the foreclosure sale, MDM conducted due diligence on the Property and concluded that it had been abandoned. On January 18, 2011, MDM began cleaning out the Property and preparing it for resale. MDM allegedly affixed a notice to the front door (the

"Notice") stating that the Property had been foreclosed upon by Ocwen and that any questions regarding the Property should be directed to MDM.

On January 30, 2011, Defendant Filbeck visited the Property and discovered that some of the possessions he left there were missing. Defendant Filbeck asserts that he did not see the Notice affixed to the front door, and thus did not contact anyone at Ocwen or MDM regarding their entry onto the Property or the removal of any of his possessions. Because of his purported belief that the Property had been burglarized, Defendant Filbeck boarded up the windows, nailed the doors shut, and posted four keep-out signs on the Property. That same day, he also filed a police report using the name of Sergeant Kenneth Mundy (the "January 30 Report"), and submitted an insurance claim to Liberty Mutual Insurance for his missing possessions. Sergeant Mundy testified at his deposition that he discovered the January 30 Report after Plaintiffs' arrest, and demanded that his name be removed from the Report, as he did not prepare it, authorize it, or know anything about it prior to discovering it sometime after Plaintiffs were arrested.

The following day, on or about January 31, 2011, Plaintiff Graham and another MDM employee, Greg Carter, returned to the Property and discovered that the windows had been boarded, the doors nailed shut, and the keep-out signs. Upon notifying MDM of their discovery, MDM's owner contacted the Butts County Sheriff's Department, which subsequently dispatched Officer Thomas Middleton to the scene. Greg Carter explained that MDM had authority to clean out the Property, and showed Officer Middleton paperwork from Ocwen. Officer Middleton told Carter that he could not authorize MDM to enter the Property. However, because he did not believe a crime was being committed, he did not make an arrest. Officer Middleton subsequently memorialized the encounter in his Daily Activity Report (the "DAR"). Defendants, however, have been unable to locate and produce the DAR.

On the morning of February 22, 2011, Plaintiffs returned to the Property to finish cleaning it out. As they were removing household items and trash, Lieutenant Matthew Vaughn arrived on the scene. Plaintiff Carter explained MDM's purpose at the Property and presented Lieutenant Vaughn and the other deputies who had subsequently arrived with

2

documents from Tina Carter demonstrating MDM's authority to be at the Property. Defendant Filbeck arrived shortly thereafter and took control of the investigation. Although Plaintiffs and MDM's owner, via telephone, attempted to explain why they were at the Property and to demonstrate their authority for being there, Defendant Filbeck ordered Plaintiffs' arrest for burglary. At that time, the Butts County Sheriff's Department allegedly confiscated two cameras, silverware, and twenty dollars in cash. Plaintiffs allege that they took photos of the Property as proof that the Property appeared abandoned. They also allege that they took photos of the Notice posted on the Property.

On June 7, 2012, Plaintiffs commenced this action against Defendants, alleging federal constitutional tort claims, pursuant to 42 U.S.C. § 1983, for arrest without probable cause as well as state law claims for negligent hiring and retention and conversion. On March 10, 2014, Defendants moved for summary judgment (Doc. 46) and Plaintiffs contemporaneously moved for sanctions against Defendant Filbeck and his counsel, alleging spoliation of evidence and discovery violations. (Doc. 25.) On June 2, 2015, the Court granted in part and denied in part Defendants' Motion for Summary Judgment. (Doc. 75.) Defendants subsequently appealed the Court's Order and moved to stay any further proceedings on Plaintiffs' Motion for Sanctions. (Docs. 77, 81, 82.) The Court denied Defendants' Motion to Stay, finding that the issues raised in Plaintiffs' Motion for Sanctions were collateral to the merits of Defendants' appeal. (Doc. 83.) Thereafter, the Court held a hearing on Plaintiffs' Motion for Sanctions (the "Sanctions Hearing") and the Parties submitted supplemental briefing. (Docs. 88-96.)

In the instant Motion, Plaintiffs seek sanctions against Defendant Filbeck and his counsel, Kevin Morris ("Attorney Morris"), alleging (1) that Attorney Morris concealed the whereabouts of Sergeant Mundy; (2) that Attorney Morris failed to disclose a known conflict relating to the representation of Sergeant Mundy; (3) that Attorney Morris and Defendant Filbeck failed to disclose the identity of Officer Middleton; (4) that Defendant Filbeck materially altered the January 30, 2011 Report by replacing Officer Mundy's name with his own and failed to disclose the alteration or the existence of the original Report; and (5) that

Defendant Filbeck destroyed Officer's Middleton's DAR and Plaintiffs' camera such that he should be liable for spoliation.

## FINDINGS OF FACT

Based on the testimony presented during the Sanctions Hearing (Doc. 94) and the record in this case, the Court makes the following findings of fact:

**I.**   **The January 30 Police Report**

Following his discovery that some of his property was missing on January 30, 2011, Defendant Filbeck filed a police report listing Sergeant Mundy as the reporting officer. Sometime after Plaintiffs' arrest, Sergeant Mundy discovered the Report and demanded that his name be removed from it, as he did not prepare it, authorize it, or know anything about its existence. (Doc. 43 at 34:19-36:8.)

Following Sergeant Mundy's complaint, and after being made aware of the possibility of a lawsuit, Defendant Filbeck altered the January 30, 2011 Report by listing himself as the reporting officer and removing any reference to himself in the Report's narrative. He did so on May 9, 2011, five days after Plaintiffs submitted a request to the Butts County Sheriff's Department to produce certain documents under the Open Records Act, O.C.G.A. § 50-18-70 *et seq.* (the "Open Records Request") (Doc. 27 at 44-48). Defendant Filbeck testified during the Sanctions Hearing that, at the time he altered the Report, he knew that by doing so the original Report would be deleted from the system. (Doc. 94 at 34:2-8.)

When questioned about submitting the Report to Liberty Mutual to recover for his missing property, Defendant Filbeck was evasive and not entirely forthcoming. For instance, when asked during his deposition whether he submitted the altered Report to Liberty Mutual, Defendant Filbeck responded that he "used the case number with the information contained in it." (Doc. 37 at 8:3-4.) Although he was not specifically asked, Defendant Filbeck never stated that a previous version of the Report had been filed. Similarly, during the Sanctions Hearing, it took multiple questions before Defendant Filbeck finally admitted that the unaltered Report was the one submitted to Liberty Mutual. (Doc. 94 at 16:10-17:9.) Even then, Defendant Filbeck attempted to diminish the significance of his actions by stating that the material information in Report remained the same. Ultimately, Plaintiffs were

able to obtain a copy of the original Report through a subpoena to Liberty Mutual. (Doc. 42.)

## II. **Destruction of Camera and Photos**

When Plaintiffs were arrested, the Butts County Sheriff's Department impounded Plaintiffs' truck and trailer. A camera containing photos, including images of the condition of the Property at each visit as well as photos of the Notice affixed to the Property on January 18, 2011 and January 29, 2011, was inside the truck.

According to Defendant Filbeck, while Plaintiffs were being held by the Sheriff's Department, he went to the impound lot to retrieve his possessions from Plaintiffs' truck and trailer. (Doc. 37 at 14:11-15:6, 73:14-21, 74:17-24, 76:2-16, 84:6-86:10, 88:3-12; Doc. 94 at 55:12-56:57:11.) Defendant Filbeck admitted that he entered the impound lot without any lawful authority and broke into the truck. (*Id.*) Defendant Filbeck further admitted that he accessed Plaintiffs' camera and downloaded some of the photos onto his computer. (*Id.*) Defendant Filbeck did so without the permission or knowledge of the Butts County Sheriff's Department and without a warrant. (*Id.*) Although Defendant Filbeck maintains that he left the camera inside the truck after downloading the photos (Doc. 37 at 74:2-4; Doc. 94 at 44:9-10, 52:4-6), the camera has never been returned to the Plaintiffs and the Butts County Sheriff's Department has not been able to locate it.

After downloading the photos, Defendant Filbeck never informed anyone at the Butts County Sheriff's Department about the camera or the photos. Plaintiffs first learned of Defendant Filbeck's actions when, during his deposition, Attorney Morris informed Plaintiffs' counsel that Defendant Filbeck had given him some photos downloaded from the missing camera.

## III. **Destruction of DAR**

After meeting with Plaintiff Graham and other MDM personnel on January 30, 2011, Officer Middleton memorialized the encounter in his DAR. (Doc. 94 at 68:7-12.) He then placed the DAR in his supervisor's box. (*Id.* at 71:1-72:20, 95:16-96:10.) At that time, Defendant Filbeck was not Officer Middleton's supervisor. (*Id.*) There is no evidence that

Defendant Filbeck had access to Officer Middleton's DAR or the box where it was filed. Nor is there any evidence that Defendant Filbeck ever came into possession of the DAR.

The Butts County Sheriff's Department attempted to locate the DAR, but was unable to find it. Although it is not entirely clear what happened to the DAR, there is insufficient evidence to conclude that Lieutenant Filbeck ever came into possession of, or destroyed, the DAR.

**IV.** **Concealment of Officer Middleton's Identity**

Following their arrest, Plaintiffs made numerous attempts to discover information regarding the January 31, 2011 encounter with Officer Middleton, including Officer Middleton's identity and any reports relating to the incident. Plaintiffs contend that both Defendant Filbeck and Attorney Morris attempted to conceal the identity of Officer Middleton throughout this process.

On May 4, 2011, Plaintiffs' counsel sent the Open Records Request, via certified mail, to Sherriff Gene Pope and the Butts County Sheriff's Department. (Doc. 27 at 44-48.) Paragraph 17 of the Request specifically sought the production of "[a]ll reports, supplemental reports or other documents and tangible things relating to case number 20012," which was the case number assigned to Officer Middleton's 911 response call to the Property on January 31, 2011. It is not clear what, if anything was produced in response to Paragraph 17 of the Open Records Request.

Following the commencement of this action, in January of 2013, Plaintiff Carter served interrogatories and requests for production on Defendants Butts County, Sheriff Gene Pope, and Defendant Filbeck. (*See* Docs. 38-41.) Therein, Plaintiff Carter requested that Defendant Filbeck:

> Please state the names, last known addresses, and last known telephone numbers of all persons whom you believe to have any knowledge or information about any facts that support any of the allegations of the complaint or support any of the denials or defenses contained in your answer.

On January 17, 2013, Defendants served Plaintiffs with their responses. In response to the above interrogatory, Defendant Filbeck did not disclose Officer Middleton's identity.

In addition to Plaintiff Carter's interrogatories and requests, Plaintiff Webster served Defendant Butts County with interrogatories and requests for production ("Webster's Request"). Webster's Request exclusively concerned the January 31, 2011 encounter with Officer Middleton, seeking, among other things, "the names and positions of all employees of Butts County who investigated or arrived at [the Property] . . . on or about January 31, 2011." (Doc. 41 at 4.) Like the Open Records Request, Webster's Request also specifically cited the 20012 case number. (*See id.*)

On February 19, 2011, Defendant Butts County responded to Webster's Request, lodging wholesale objections and asserting that it "exercises no control over the law enforcement functions of the Butts County Sheriff" and that it was "not aware that any individuals it employs visited or investigated [the Property] on January 31, 2011." (Doc. 27 at 36-41.) Butts County further stated that it was not "the custodian of documents prepared or retained by the Butts County Sheriff." (*Id.*) Also on February 19, 2011, Defendants supplemented their prior responses to Plaintiff Carter's discovery requests, and produced a copy of the Butts County Computer Aided Dispatch report (the "CAD Report") of Officer Middleton's 911 dispatch call to the Property on January 31, 2011. (Doc. 92 at ¶ 8.) Although the CAD Report listed the unit number of the officer who responded to the call (*see* Doc. 91-5), it did not identify Officer Middleton.

After receiving the CAD Report, Plaintiffs made no further inquiry regarding the Report until Defendant Filbeck' deposition on June 7, 2013. During the deposition, Plaintiffs' counsel introduced the CAD Report and questioned Defendant Filbeck on whether he was aware of a deputy responding to the Property on January 31, 2011. (Doc. 37 at 12:21-25.) In response, Defendant Filbeck unequivocally answered "no." (*Id.* At 13:3.) Plaintiffs' counsel asked no follow-up questions regarding the information in the CAD Report.

Following Defendant Filbeck's deposition, on June 11, 2013, Plaintiffs' counsel emailed Attorney Morris and demanded that Defendants identify the deputy who responded to the call on January 31, 2011. (Doc. 92 at ¶ 13.) The next day, on June 12, 2013, Plaintiffs' counsel deposed Sheriff Pope. When shown the CAD Report, Sheriff Pope easily identified

Officer Middleton as the officer who responded to the call on January 31, 2011. (Doc. 35 at 51:9-23.) In fact, Sheriff Pope identified Officer Middleton without being specifically asked by Plaintiffs' counsel to do so. (*Id.*)

Plaintiffs' counsel deposed Officer Middleton on August 23, 2013. During his deposition, Officer Middleton testified that he spoke to Defendant Filbeck, on or around the day of Plaintiffs' arrest, regarding his January 31, 2011 encounter with MDM personnel. (*See* Doc. 29 at 23:19-30:12.) During the conversation, Officer Middleton told Defendant Filbeck that the people he met with showed him paperwork that purportedly authorized them to clean out the Property. (*Id.* at 26:15-24.) Defendant Filbeck asked Officer Middleton "if [Plaintiffs] were the guys that was [sic] out there." (*Id.* at 24:1-5.) Officer Middleton could not recall their names, but told Defendant Filbeck to check the dispatch log or his DAR. (*Id.* at 24:2-25.)

During the Sanctions Hearing, Plaintiffs' counsel and the Court repeatedly questioned Defendant Filbeck on whether he had spoken to Officer Middleton about Plaintiffs' arrest and Officer Middleton's January 31, 2011 call to the Property. (Doc. 94 at 36:7-37:20, 48:10-18, 60:12-61:6.) Consistent with his deposition testimony, Defendant Filbeck reiterated his denial of having any knowledge of a deputy responding to a call at the Property on January 31, 2011. (*Id.*) Defendant Filbeck further denied every speaking to Officer Middleton about Plaintiffs' arrest or the January 31, 2011 encounter. (*Id.*) Although Defendant Filbeck admitted that he would have expected someone he knew and worked with to tell him about responding to a potential burglary at his home, Defendant Filbeck insisted that he never spoke to Officer Middleton. (*Id.* at 60:12-61:6.)

Contrary to Defendant Filbeck's testimony, Officer Middleton repeatedly testified during the Sanctions Hearing that he spoke to Defendant Filbeck around the time of Plaintiffs' arrest. According to Officer Middleton, Defendant Filbeck called him and asked "if the people [Defendant Filbeck] had arrested were the same people that were on the call." (Doc. 94 at 81:2-13.)

After questioning Defendant Filbeck and Officer Middleton, Plaintiffs' counsel called Attorney Morris to testify about, among other things, his efforts to identify Officer

Middleton. (*Id.* at 138:2-139:20, 151:19-159:3.) Attorney Morris equivocated on many of his answers, and could not provide the Court with any detail regarding his efforts to identify Officer Middleton. (*Id.*) As such, the Court provided Attorney Morris with the opportunity to supplement his responses. On August 10, 2015, Attorney Morris filed an affidavit outlining the actions he took in attempting to identify Officer Middleton. (*See* Doc. 92.) The affidavit makes clear that, after producing the CAD Report, Attorney Morris made no attempt to identify Officer Middleton. (*Id.*)

## V.   Concealment of Sergeant Mundy's Whereabouts and a Known Conflict

In addition to moving for sanctions against Attorney Morris for failing to identify Officer Middleton, Plaintiffs also moved for sanctions against him for allegedly concealing the location of Officer Mundy and failing to disclose a known conflict in representing him.

Prior to the commencement of this action, Attorney Morris represented Officer Mundy in an unrelated lawsuit. Around the time this action was commenced, Attorney Morris contacted Officer Mundy to notify him that summary judgment had granted in that action. During the conversation, Attorney Morris also informed Officer Mundy that another case "might come up." (Doc. 43 at 48:12-15.) Attorney Morris explained what the instant case was about, and Officer Mundy indicated that he would be testifying in Plaintiffs' favor.

According to Plaintiffs, Attorney Morris represented that he was counsel for all law enforcement witnesses in this case, including Officer Mundy. Plaintiffs assert that they relied on Attorney Morris to produce Officer Mundy for his deposition, but that Attorney Morris intentionally failed to do so, thereby delaying the litigation. Plaintiffs contend that Attorney Morris was motivated to conceal the whereabouts of Officer Mundy because he knew that his testimony would be harmful to Defendants' case. (Doc. 28 at 5.)

Contrary to Plaintiffs' assertions, the record is devoid of any evidence that Attorney Morris affirmatively represented to Plaintiffs' counsel that he represented all law enforcement personnel in this matter. Rather, the record reflects that Attorney Morris offered to assist Plaintiffs, as a professional courtesy, in locating Mundy because he had represented him in a prior, unrelated lawsuit. Although Attorney Morris offered to assist Plaintiffs in locating Officer Mundy, there is no evidence that he knew where Officer Mundy

was located or how to contact him. Instead, the record reflects that Attorney Morris undertook multiple efforts to find Officer Mundy's contact information, including contacting at least six people who worked for the Butts County Sheriff's Department. Ultimately, however, Attorney Morris did not obtain or provide Plaintiffs with contact information for Officer Mundy.

Plaintiffs contend that their case has been hampered because Attorney Morris knew, based on his conversation with Officer Mundy, that he had a conflict with representing Mundy in this case. While there likely would have been a conflict had Attorney Morris represented Officer Mundy in this case, the record indicates that he never provided any legal advice to Officer Mundy, or represented Officer Mundy in any capacity during this litigation. Rather, Officer Mundy was provided separate legal counsel for his deposition.

## DISCUSSION

### I.   Sanctions against Defendant Filbeck

#### A.   Spoliation of Evidence

Plaintiffs contend that Defendant Filbeck destroyed the following evidence: (1) the original January 30, 2011 Report; (2) the camera and photographs documenting MDM's actions at the Property, including a photo showing the Notice affixed to the Property; and (3) Officer Middleton's DAR memorializing his January 31, 2011 meeting with MDM personnel at the Property.

Spoliation refers to the "destruction or significant alteration of evidence, or the failure to preserve property for another's use in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 Fed.Appx. 298, 301 (11th Cir. 2009). "A court's power to impose sanctions for spoliation flows from its inherent power to manage its affairs and achieve an orderly and expeditious disposition of cases." *Woodard v. Wal-Mart Stores E., LP*, 801 F. Supp. 2d 1363, 1371 (M.D. Ga. 2011) (citing *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005)). "Sanctions function to prevent unfair prejudice to litigants and to ensure the integrity of the discovery process." *Id.* The Court has broad discretion in determining whether to award spoliation sanctions. *Flury*, 427 F.3d at 945.

Although the Eleventh Circuit has not prescribed "specific guidelines" for imposing spoliation sanctions, the court in *Flury* set forth the following factors for courts to consider: (1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence is not excluded.[1] *Id.* Appropriate sanctions for spoliation may include: "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." *Id.* However, an adverse inference should not be drawn unless the circumstances surrounding the evidence's absence indicate bad faith. *See Bashir v. Amtrak,* 119 F.3d 929, 931 (11th Cir.1997) (finding that "an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith"). "While this circuit does not require a showing of malice in order to find bad faith, mere negligence in losing or destroying records is not sufficient to draw an adverse inference." *Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1310 (11th Cir. 2009).

### i.   *Alteration of January 30, 2011 Report*

Weighing the *Flury* factors, the Court finds that spoliation sanctions are warranted against Defendant Filbeck for the alteration and destruction of the original January 30, 2011 Report. As to the first and second factors, Defendant Filbeck contends that Plaintiffs suffered no prejudice because the unaltered Report was produced by Liberty Mutual prior to the close of discovery on July 1, 2013. "Although it is true that the [Plaintiffs] obtained the [January 30, 2011 Report] through other means, that fact does not alleviate the damage done to the [Plaintiffs'] case when very relevant evidence, such as the [January 30, 2011 Report], is

---

[1] Although these specific factors are enumerated under Georgia law, the court in *Flury* noted that "Georgia state law on spoliation is wholly consistent with federal spoliation principles." *Id.* at 944. Therefore, "the fact that this case is not a diversity suit has no bearing on the applicability of the law governing spoliation sanctions as determined by the court in *Flury*." *Connor v. Sun Trust Bank,* 546 F. Supp. 2d 1360, 1376 n.6 (N.D. Ga. 2008); *see also In re Delta/AirTran Baggage Fee Antitrust Litig.,* 770 F. Supp. 2d 1299, 1305 n.6 (N.D. Ga. 2011); *Graff v. Baja Marine Corp.,* 310 F. App'x 298, 301 (11th Cir. 2009) ("To determine whether spoliation sanctions are warranted, a court must consider the factors identified in *Flury v. Daimler Chrysler Corp.,* 427 F.3d 939.").

not produced and is subsequently destroyed" as a result of Defendant Filbeck's actions. *Connor v. Sun Trust Bank*, 546 F. Supp. 2d 1360, 1376 (N.D. Ga. 2008). Indeed, "[i]f relevant evidence is not produced, for whatever reason, and then is destroyed before either party learns of the existence of that evidence, then the absence of the relevant evidence prejudices the party that would have relied on it to prove its case." *Id.*

As in *Connor*, "the prejudice resulting from [Defendant Filbeck's] failure to produce an undisputedly relevant [piece of evidence] raises a concern that other relevant [evidence] may have existed at the time the duty to preserve arose but [has] since been deleted." *Id.* This is precisely the concern Plaintiffs reiterate throughout their briefs. In fact, Plaintiffs' principal piece of evidence that Defendant Filbeck destroyed Officer Middleton's DAR is that he altered the January 30, 2011 Report. In other words, Plaintiffs have been prejudiced by Defendant Filbeck's alteration and destruction of the January 30, 2011 Report "because it raises a question of whether there were other relevant [pieces of evidence] in existence at that time but which were also not produced" and possibly destroyed by Defendant Filbeck. *Id.* This prejudice, however, can be cured through Plaintiffs' acquisition of the unaltered Report from Liberty Mutual and an adverse jury instruction.

With respect to the third factor, the Court finds that the evidence is important to Plaintiffs' case because it directly relates to what Defendant Filbeck knew, and the actions he took, leading up to Plaintiffs' arrest. As discussed above, the creation of the false Report and the subsequent alteration was highly prejudicial to Plaintiffs. Moreover, the original false Report and the altered Report are relevant to whether Defendant Filbeck objectively acted in good faith such that he would be entitled to qualified immunity. (*See* Doc. 75 at 22-23.)

As to the fourth factor, the Court concludes that Defendant Filbeck acted in bad faith in altering the Report. In making this determination, the Court must "weigh the degree of the spoliator's culpability against the prejudice to the opposing party." *Flury*, 427 F.3d at 946. Defendant Filbeck is clearly culpable for the destruction of the January 30, 2011 Report. During the Sanctions Hearing, he testified that he was aware that altering the Report would delete the original Report from the system. (Doc. 94 at 34.) In addition, when questioned during his deposition and at the Sanctions Hearing regarding the submission of the Report

to Liberty Mutual, Defendant Filbeck was evasive about his actions related to the Report. Although Defendant Filbeck contends that he testified truthfully about the submission of "the case number with the information contained in it [to Liberty Mutual]," (Doc. 37 at 8:3-4), Defendant Filbeck's testimony was, at best, misleading. Defendant Filbeck's attempt to diminish the significance of his actions is also without merit. The name of the reporting officer is certainly material to the reliability of the Report – in that it was actually made by the purported victim. That Defendant Filbeck falsified the original Report and provided it to an insurance company is also important as is his attempt to conceal his fraudulent behavior when confronted with this lawsuit. Accordingly, even though the prejudice to Plaintiffs is mitigated by the fact that they obtained the original Report from Liberty Mutual, in light of the degree of Defendant Filbeck's culpability, the Court finds that Defendant Filbeck acted in bad faith when he knowingly altered and deleted the original Report.

Weighing the *Flury* factors,[2] the Court finds that spoliation of evidence has occurred and that sanctions are warranted. This spoliation, however, can be cured by a sanction less severe than dismissal of Defendant Filbeck's answer and the entry of a default judgement. In light of the degree of prejudice to Plaintiffs and Defendant Filbeck's culpability, the Court finds that a jury instruction on the spoliation of the original Report is the most appropriate sanction.

    ii.   *Missing Camera and Pictures*

All four applicable *Flury* factors weigh in favor of imposing sanctions with regard to the spoliation of the camera and photos. As to factors one and three, Plaintiffs clearly were prejudiced by the destruction of the evidence which is certainly of practical importance in this case. One of the central issues in this case is whether Defendant Filbeck had arguable probable cause to believe that Plaintiffs were committing a crime at the time he ordered their arrest. Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable

---

[2] "The fifth *Flury* factor is irrelevant where, as here, the spoliated evidence is not the subject of expert testimony." *Pinkney v. Winn-Dixie Stores, Inc.*, No. 14-CV-075, 2015 WL 858093, at *7 (S.D. Ga. Feb. 27, 2015).

cause existed to arrest Plaintiff." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). Determining what Defendant Filbeck knew at the time he ordered Plaintiffs' arrest is therefore critical to this case.

Plaintiffs assert that their missing camera contained photos showing the Notice affixed to the Property on January 29, 2011, a day before Defendant Filbeck visited the Property and filed the January 30, 2011 Report. Such photos would certainly be relevant to whether Defendant Filbeck knew that Ocwen had foreclosed on the Property and hired MDM to prepare it for resale. Defendant Filbeck, however, contends that because there "is no concrete evidence that the photograph ever existed," this is a classic case of "'he said, she said' that may ultimately require a jury to decide who is telling the truth, but it is not something that is appropriate for a spoliation sanction." (Doc. 96 at 10.)

Contrary to Defendant Filbeck's assertion, the issue is not whether Plaintiffs have "concrete evidence" that the camera contained a specific photo showing the Notice affixed to the Property on January 29, 201, but rather whether Defendant Filbeck tampered with or destroyed a camera purporting to contain such photos. "To require a party to show, before obtaining sanctions, that unproduced evidence contains damaging information would simply turn 'spoliation law' on its head." *Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1379 (S.D. Ga. 2008); *Pinkney v. Winn-Dixie Stores, Inc.*, No. 14-CV-075, 2015 WL 858093, at *5 (S.D. Ga. Feb. 27, 2015) ("Allowing Defendant to avoid spoliation sanctions through the testimony of its witness that the destroyed evidence would not have benefited Plaintiff would turn spoliation law on its head."); *see also Residential Funding Corp. v. Degeorge Financial Corp.*, 306 F.3d 99, 109 (2d Cir. 2002) ("Courts must take care not to hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence, because doing so would subvert the purposes of the adverse inference, and would allow parties who have destroyed evidence to profit from that destruction." (alterations omitted) (internal quotation marks omitted)). In other words, it is the tampering of the camera that is relevant for purposes of determining whether spoliation sanctions are warranted. Without the camera, Plaintiffs are prejudiced because it is impossible to prove exactly what photos were on the camera. *See Pinkney*, 2015 WL 858093, at *5 (finding that

14

the plaintiff was prejudiced, despite the testimony of the defendant's witness that the missing photos "didn't really show anything," because "Plaintiff is unable to rebut [the witness's] testimony without the ability to view the photographs themselves"); *Brown*, 563 F. Supp. 2d at 1379 (finding that the plaintiff was prejudiced by the loss of notes relevant to plaintiff's case, despite the government's contention that is was "pure speculation that the notes contained any damaging evidence"); *Woodard*, 801 F. Supp. 2d at 1373 (finding that the plaintiff was prejudiced by the loss of a videotape that could have contained evidence relevant to plaintiff's case); *see also Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1282 (M.D. Fla. 2009) ("Whether the spoliated evidence would have actually been detrimental to the case is irrelevant at this point, because no one, other than perhaps the Defendants themselves, can know for certain.").

As to the second factor, although the prejudice to Plaintiffs can be cured to some extent through the testimony of Plaintiffs and other MDM personnel, this testimony hardly works a complete cure to the loss of the camera. Certainly, "the absence of [the camera] makes [Plaintiffs'] case more difficult to prove." *Brown*, 563 F. Supp. 2d at 1379. As noted above, a central dispute in this case is whether Defendant Filbeck saw the Notice affixed to the Property on January 30, 2011. Although Plaintiffs can introduce testimony that a photo of the Notice was taken on January 29, 2011, Defendant Filbeck disputes that contention, claiming that there was no photo on the camera depicting the Notice affixed to the Property. Thus, "while the witnesses' testimonies slightly alleviate the prejudice caused by [Defendant Filbeck's] spoliation, they do not cure it." *Pinkney*, 2015 WL 858093, at *6; *see also Brown*, 563 F. Supp. 2d at 1379 ("On balance, then, the available testimony of the individuals involved . . . alleviates only some, but not all, of the prejudice stemming from the spoliation."); *Woodard*, 801 F. Supp. 2d at 1373-74 (finding that prejudice to the plaintiff could be cured only partially by the testimony of witnesses).

As to the fourth factor, the Court finds that the circumstances surrounding the loss of Plaintiffs' camera warrant a finding of bad faith. It is undisputed that Defendant Filbeck illegally accessed and downloaded photos from Plaintiffs' camera while Plaintiffs were in jail and without the knowledge or authorization of the Butts County Sheriff's Department or a

warrant. There is no evidence that the camera was returned to Plaintiffs; nor is there any evidence that other Butts County personnel took possession or control of the camera after Defendant Filbeck accessed it. "Thus, at the least, Defendant [Filbeck] failed to safeguard evidence which he unquestionably had a duty to preserve." *Pinkney*, 2015 WL 858093, at *7. Indeed, the fact that Defendant Filbeck downloaded the photos onto his personal computer indicates that he was aware of the potential for litigation at that time. Yet, Defendant Filbeck failed to take any action to safeguard the camera. Accordingly, the culpability for the loss of the camera rests solely with Defendant Filbeck. *See Flury*, 427 F.3d at 946 (finding that the plaintiff was culpable for the loss of vehicle because he "was the only party in a position to preserve the vehicle and failed to do so"); *Pinkney*, 2015 WL 858093, at *7 (finding that Defendant was culpable for loss of photos because it "was the only party to possess the photographs and the only party who could preserve them").

Moreover, Defendant Filbeck had a strong personal motive to tamper with Plaintiffs' camera and destroy any damaging photos. Not only is the camera relevant to the probable cause inquiry, but had the camera contained photos of the Notice affixed to the Property on January 29, 2011, Defendant Filbeck's claim that the Property was burglarized on January 30, 2011, would have been called into question. This, in turn, would have called into question the legality of the insurance claim Defendant Filbeck submitted to recover for his missing property. Although Defendant Filbeck asserts that he returned the camera and did not delete any photos, his assertions are not credible. The disappearance of the camera has not been explained and the only evidence shows that Defendant Filbeck broke into the impound lot, broke into the truck, and illegally accessed the photos on the camera. Thereafter, the camera disappeared. These circumstances certainly indicate bad faith. *See Se. Mech. Servs., Inc. v. Brody*, 657 F. Supp. 2d 1293, 1300 (M.D. Fla. 2009) (finding that "the circumstances surrounding the destruction of data from Individual BlackBerries indicate[d] bad faith" where the defendants "had both the motive and the opportunity to wipe the BlackBerries of data").

The circumstances surrounding Defendant Filbeck's disclosure of the illegally obtained photos are also troubling. Defendant Filbeck did not disclose the photos or his actions in his initial disclosures or in his responses to Plaintiffs' interrogatories. Nor did he

produce the photos in response to Plaintiffs' requests for production. Defendant Filbeck did not inform Plaintiffs of his actions or his possession of any of the photos until the time of his deposition when he attempted to use them to support his defense of qualified immunity. Such actions cannot be said to be made in good faith.

Considering Defendant Filbeck's culpability for the loss of the camera, his motives for tampering with the camera, and his questionable conduct surrounding the production and use of the illegally obtained photos, the Court finds that "this is not a circumstance of inadvertent destruction of evidence or negligence in the loss of material data from which the Court is being asked to infer bad faith. Rather, it is a case of knowing and willful disregard for the clear obligation to preserve evidence that was solely within the possession and control of [Defendant Filbeck] and whose contents have no other source than that which has now been spoliated." *Swofford*, 671 F. Supp. 2d at 1282. Under such circumstance, the prejudice to the Plaintiffs is substantial; Defendant Filbeck's bad faith is clear; and sanctions are warranted.

Contrary to Plaintiffs' contention, however, a sanction less severe than entry of a default judgement will suffice. If this case proceeds to trial, the Court will instruct the jury that the absence of the camera gives rise to a rebuttable presumption that the camera contained evidence that the Property appeared abandoned and that the Notice was affixed to the Property on January 29, 2011. The Court will also instruct the jury that Defendant Filbeck is free to introduce evidence to rebut that adverse presumption. However, Defendant Filbeck is prohibited from introducing those photos he illegally downloaded from the camera. This sanction alleviates the prejudice to Plaintiffs, while also eliminating any unfair advantage regarding the evidence presented at trial.

   iii.  *Officer Middleton's Daily Activity Report*

With respect to the missing DAR, Plaintiff has failed to present direct or circumstantial evidence demonstrating that Defendant Filbeck acted in bad faith in losing the DAR, or evidence showing that Defendant Filbeck engaged in an affirmative act causing the DAR to be lost. Although Officer Middleton testified that he told Defendant Filbeck that he could look up the information regarding his encounter with MDM in the

DAR, Defendant Filbeck disputes ever speaking with Officer Middleton about the encounter or Plaintiffs' arrest. While the Court found Defendant Filbeck's testimony to be less than credible, there is no evidence that Defendant Filbeck had access to Officer Middleton's DAR or the box where it was filed. Nor is there any evidence that Defendant Filbeck ever came into possession of the DAR.

Without establishing that Defendant Filbeck ever knew or came in to possession of the DAR, Plaintiffs cannot establish that Defendant Filbeck had a duty to preserve it or that he acted in bad faith in losing it. Thus, Plaintiffs have failed to meet their burden of establishing that sanctions are warranted against Defendant Filbeck for the loss of Officer Middleton's DAR.

## B.    Conceal Officer Middleton's Identity

Plaintiffs seek sanctions against Defendant Filbeck for allegedly concealing the identity of Officer Middleton. Plaintiffs have brought their Motion pursuant to the Court's inherent power, which grants courts "the authority to impose reasonable and appropriate sanctions." *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002) (internal quotation marks omitted). This authority is derived from the Court's need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). "While the other sanction mechanisms only reach certain individuals or conduct, 'the inherent power extends to a full range of litigation abuses' and 'must continue to exist to fill in the interstices.'" *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (quoting *Chambers*, 501 U.S. at 46). In fact, the "inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Chambers*, 501 U.S. at 46. Because of its very potency, however, the inherent power of the Court must be exercised with restraint and discretion. *Id.* at 44.

"The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). Bad faith exists where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order. *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002). "Sanctions authorized under the court's inherent powers include the

striking of frivolous pleadings or defenses, disciplining lawyers, punishing for contempt, assessment of attorney's fees, and outright dismissal of a lawsuit." *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005) (collecting cases).

Plaintiffs contend that Defendant Filbeck acted in bad faith and disrupted this litigation by failing to identify Officer Middleton in response to their interrogatories and during Defendant Filbeck's deposition. Although Defendant Filbeck steadfastly denies having any knowledge of an officer responding to the Property on January 31, 2011, or ever talking to Officer Middleton regarding Plaintiffs' arrest, the Court finds that Defendant Filbeck's testimony was not credible. Unlike Defendant Filbeck, Officer Middleton has no motive to fabricate his testimony or conceal the conversation with Defendant Filbeck. Furthermore, Officer Middleton and Defendant Filbeck had worked with each other for years and Officer Middleton was aware that Defendant Filbeck lived at the Property. (Doc. 94 at 78:10-12.) Defendant Filbeck admitted that he would have expected a fellow officer to tell him if an incident had occurred at his home. (*Id.* at 60:24-61:3.) In light of Defendant Filbeck's attempts at evasion during his deposition and at the Sanctions Hearing, Officer Middleton's testimony, and the surrounding circumstances, the Court does not credit Defendant Filbeck's testimony concerning whether he knew of Officer Middleton's response to the Property on January 31, 2011. Accordingly, Plaintiffs' Motion for Sanctions is **GRANTED** as to their claims that Defendant Filbeck acted in bad faith by concealing the identity of Officer Middleton.

In light of Defendant Filbeck's spoliation of material evidence and attempted concealment of Officer Middleton's identity, the Court finds that requiring Defendant Filbeck to pay Plaintiffs' costs and attorney's fees incurred in connection with the instant Motion is appropriate. Plaintiffs contend that their attorneys have expended over 1,000 hours and approximately $15,000 to $20,000 in costs. However, it is unclear how much of these expenses are related to the instant Motion and are attributable to Defendant Filbeck's misconduct. Furthermore, the Eleventh Circuit has mandated that "when exercising its discretion to sanction under its inherent power, a court must take into consideration the financial circumstances of the party being sanctioned." *Martin v. Automobili Lamborghini*

*Exclusive, Inc.*, 307 F.3d 1332, 1337 (11th Cir. 2002). Given that the record is devoid of any information regarding Defendant Filbeck's financial circumstances, the Court cannot assess the appropriate amount of costs and fees. Accordingly, within twenty-one (21) days of the date of this Order, Plaintiffs shall file the appropriate brief and supporting documentation regarding the expenses and fees incurred in connection with this Motion. Within fourteen (14) days thereafter, Defendant Filbeck shall file his opposition and any supporting documentation. Plaintiffs will then have fourteen (7) days to respond. If necessary, the Court will set a hearing to determine the appropriate amount of fees and costs.

## II.   <u>Sanctions against Attorney Morris</u>

Plaintiffs have moved for sanctions against Attorney Morris for failing to disclose the identity of Officer Middleton and allegedly concealing the whereabouts of Sergeant Mundy. In addition, Plaintiffs contend that Attorney Morris acted in bad faith by failing to disclose a known conflict in representing Sergeant Mundy. As with their claims against Defendant Filbeck, Plaintiffs have brought their claims pursuant to the Court's inherent power.

Under the inherent power, "a federal court has the power to control admission to its bar and to discipline attorneys." *Chambers*, 501 U.S. at 43. However, "before a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct constituted or was tantamount to bad faith." *Thomas*, 293 F.3d 1306, 1320 (11th Cir. 2002). As noted above, bad faith exists where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order. *Id.* "When considering sanctions [against an attorney] under the court's inherent power, the threshold of bad faith conduct is at least as high as the threshold of bad faith conduct for sanctions under [28 U.S.C.] § 1927." *Peer*, 606 F.3d at 1316. "So sanctions that are impermissible under § 1927 are also impermissible under a district court's inherent powers." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1252 (11th Cir. 2007).

"Section 1927 is directed at the unreasonable and vexatious multiplication of proceedings." *Peer*, 606 F.3d at 1314 (citing 28 U.S.C. § 1927). This statute requires attorneys "to avoid dilatory tactics throughout the entire litigation," *id.*, and allows the Court to "assess attorney's fees against litigants, counsel, and law firms who willfully abuse the judicial

process by conduct tantamount to bad faith." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993). "To justify an award of sanctions pursuant to section 1927, an attorney must engage in unreasonable and vexatious conduct; this conduct must multiply the proceedings; and the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *Peer*, 606 F.3d at 1316.

### A.  Conceal Officer Middleton's Identity

Plaintiffs contend that Attorney Morris acted in bad faith and disrupted this litigation by failing to identify Officer Middleton in response to Webster's Requests, which Plaintiffs assert were "specifically designed to obtain information about the January 31, 2011, call to the property . . . and the identity of the Deputy who responded." (Doc. 93 at 2.) As noted above, in response to Webster's Requests, Butts County, through Attorney Morris, lodged wholesale objections, claiming that Butts County "exercises no control over the law enforcement functions of the Butts County Sheriff" and that it was "not aware that any individuals it employs visited or investigated [the Property] on January 31, 2011." (Doc. 27 at 36-41.) Butts County also stated that it was not "the custodian of documents prepared or retained by the Butts County Sheriff." (*Id.*) According to Plaintiffs, Officer Middleton should have been identified in response to Webster's Requests, regardless of whether Officer Middleton "worked for the County or the Sheriff's Department." (Doc. 63.) Of course, Attorney Morris was aware that an officer had responded to a 911 call at the Property on January 31, 2011, as evidenced by the CAD Report Attorney Morris produced on the same date he served Butts County's responses. The question, then, is whether Attorney Morris acted in bad faith and multiplied the proceedings by improperly objecting to Webster's Requests and failing to identify Officer Middleton. The Court finds that de did not.

The Eleventh Circuit has held "that negligent conduct, standing alone, will not support a finding of bad faith under § 1927– that is, an attorney's conduct will not warrant sanctions if it simply fails to meet the standard of conduct expected from a reasonable attorney." *Amlong*, 500 F.3d at 1241-42; *see also Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) ("Section 1927 is not about mere negligence."). Instead, "an attorney's conduct must be particularly egregious to warrant the imposition of sanctions – the attorney

must knowingly or recklessly pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim." *Id.* "Bad faith is the touchstone." *Schwartz*, 341 F.3d at 1225.

For instance, in *Malautea*, the Eleventh Circuit affirmed the district court's award of sanctions against the defendants and their counsel, concluding that "the defendants and their attorneys engaged in an unrelenting campaign to obfuscate the truth." 987 F.2d at 1544. In reaching this conclusion, the court found that defense counsel acted in bad faith and unreasonably multiplied the proceedings by: (i) improperly objecting to interrogatories in order to avoid revealing certain information; (ii) providing answers that were incomplete and unreasonably narrow; (iii) requiring the district judge to issue three orders to compel information that should have been produced without any judicial prompting; (iv) delaying (either deliberately or carelessly) compliance with the Magistrate Judge's orders to produce deposition transcripts; and (v) failing to comply with a court order to produce certain discoverable material that the defendants, with the assistance of their counsel, attempted to cover up. *Id.* at 1544-45.

Unlike in *Malautea*, Plaintiffs have failed to establish that Attorney Morris acted in bad faith and multiplied these proceedings by failing to identify Officer Middleton. Attorney Morris did not assist in covering up material evidence or fail to comply with a Court order. Nor did he engage in a pattern of obstructive behavior. Although Plaintiffs assert that they "requested the identity of Middleton numerous times," (Doc. 93 at 3), the record reflects that Plaintiffs only sought this information in forms to which Attorney Morris could comply on two occasions – (1) Webster's Requests in January 2013; and (2) an email on June 11, 2013, a day after Defendant Filbeck's deposition. Even if Plaintiffs believed Attorney Morris improperly objected to Webster's Requests, they could have moved to compel. Alternatively, they could have requested the information from the Butts County Sheriff's Department, Defendant Filbeck, or Sheriff Pope. However, unlike in *Malautea*, Plaintiffs did nothing.

In addition, despite receiving the CAD Report with all the necessary information to identity Officer Middleton on February 19, 2013, Plaintiffs made no inquiry regarding the Report until Defendant Filbeck's deposition, nearly four months later. Even then, Plaintiffs did not specifically question Defendant Filbeck regarding the unit number listed on the

CAD Report. Instead, they waited until after Defendant Filbeck's deposition before demanding that Attorney Morris identify the officer listed on the CAD Report. The next day, Plaintiffs discovered Officer Middleton's identity during Sheriff Pope's deposition. In short, Plaintiffs' efforts to identify Officer Middleton were dilatory.

While Attorney Morris certainly could have undertaken a more thorough investigation to identify Officer Middleton, his conduct does not rise to the level of bad faith required to impose sanctions under § 1927. Furthermore, unlike in *Malautea*, Attorney Morris' actions, or lack thereof, did not multiply these proceedings. Accordingly, Plaintiffs have failed to establish the requisite bad faith for awarding sanctions under § 1927 or the Court's inherent power.

However, the inherent power and § 1927 are not the only mechanisms by which the Court can impose sanctions against attorneys for discovery abuses. Under Federal Rule of Civil Procedure 26(g), an attorney is required to certify that the discovery responses provided are complete and correct to the best of the attorney's knowledge, information, and belief formed after a reasonable inquiry. Fed. R. Civ. P. 26(g)(1)(A). The attorney must also certify that the response is not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. Fed. R. Civ. P. 26(g)(1)(B). Rule 26(g) mandates that the Court, on motion or on its own, impose sanctions if a certification violates the rule without substantial justification. Fed. R. Civ. P. 26(g)(3); *see also Malautea*, 987 F.2d at 1545 ("Rule 26(g) makes the imposition of 'an appropriate sanction' mandatory if a discovery request, response, or objection is interposed for an improper purpose."). "The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3).

Attorney Morris is the attorney who signed Butts County's responses to Webster's Requests and, therefore, was responsible for the accuracy and propriety of them. (*See* Doc. 27 at 41.) During the Sanctions Hearing, the Court specifically questioned Attorney Morris on his efforts to comply with his obligations under Rule 26. Attorney Morris testified that he first became aware of Officer Middleton's identity during Sheriff Pope's deposition in June of 2013. (Doc. 94 at 151:19-152:4.) When questioned about what he had done prior to then,

Attorney Morris responded that he was not aware of ever being asked to identify Officer Middleton. (*Id.* at 152:7-8.) The Court then pointed to Butts County's responses to Webster's Requests. Consistent with Butts County's response that it was not "the custodian of documents prepared or retained by the Butts County Sheriff," (Doc. 27 at 36-41), Attorney Morris testified that Butts County "wouldn't have that information." (*Id.* at 152:21-22.)

Contrary to Butts County's responses and Attorney Morris' testimony, Butts County did have that information. The CAD Report was generated by the Butts County 911 system, which is an agency of the County and not part of the Sheriff's Department. (Doc. 94 at 83:19-84:6.) According to Officer Middleton, if Plaintiffs had contacted the Sheriff's Department with the case number generated by the CAD Report, the Sheriff's Department would have contacted the 911 system, which, in turn, would have allowed the Sheriff's Department to identify Officer Middleton and provide Plaintiffs with the information regarding the 911 call. (Doc. 94 at 92:20-93:1.) Although Attorney Morris testified, somewhat equivocally, that the sheriff told him that "we don't have a daily activity log so we can't figure out who would have been out there," (*id.* at 155:4-5), Attorney Morris offers no explanation for why he or the Sheriff's Department did not simply obtain the CAD Report and identify the officer who responded to the call.

As the Court pointed out during the Sanctions Hearing, it would have taken a mere three steps for Attorney Morris to determine the identity of Officer Middleton – (1) ask the sheriff to "find out who responded to the house;" (2) the sheriff would then request the CAD Report from the 911 system; and (3) match the badge number listed on the CAD Report to Officer Middleton. (*Id.* at 157:22-158:1.) In fact, it would have taken even less than three steps, given that Attorney Morris had already obtained the CAD Report at the time he submitted Butts County's responses to Webster's Requests. Attorney Morris simply could have presented the CAD Report to the sheriff and requested that he identify the officer whose badge number appeared on the Report. Had he done so, Attorney Morris could have easily identified Officer Middleton, as evidenced by the ease with which Sheriff Pope identified Officer Middleton during his deposition. Yet, based on Attorney Morris' testimony during the Sanctions Hearing and his supplemental declaration, Attorney Morris

never presented anyone at the Sheriff's Department with the CAD Report in order to identify Officer Middleton. Attorney Morris' failure to do so demonstrates a failure to undertake a reasonable inquiry into the correctness of Butts County's responses to Webster's Requests. *See* Fed. R. Civ. P. 26, Advisory Committee Notes (1983 Amendment) ("Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances.").

Moreover, to the extent Attorney Morris maintains that Butts County was not the appropriate party from which to request information regarding the January 31, 2011 call, the Court finds that interposing such an objection would be improper. Requiring Plaintiffs to resubmit Webster's Requests to Sheriff Pope, Defendant Filbeck, or the Butts County Sheriff's Department would have resulted in an unnecessary delay and needlessly increased the cost of this litigation, as would requiring Plaintiffs to move to compel the disclosure of such information from Butts County. Attorney Morris represented all Defendants in this action and was aware of the information Plaintiffs were attempting to uncover. Officer Middleton's identity is highly relevant to the probable cause analysis in this case, and Attorney Morris' failure to disclose it is without substantial justification. Accordingly, because Attorney Morris violated his obligations under Rule 26(g), the Court must impose an "appropriate sanction." *Malautea*, 987 F.2d at 1545; *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1372 (11th Cir. 1997) ("The decision whether to impose sanctions under Rule 26(g)(3) is not discretionary. Once the court makes the factual determination that a discovery filing was signed in violation of the rule, it must impose "an appropriate sanction.").

Although Rule 26(g) explicitly authorizes the imposition of sanctions for reasonable expenses and attorney's fees, "the decision of what sanction is appropriate . . . is committed to the district court's discretion." *Chudasama*, 123 F.3d at 1372. In fashioning the appropriate sanction, the Court considers the nature of the sanction "in light of the particular circumstances." Fed. R. Civ. P. 26, Advisory Committee Notes (1983 Amendment). The Court must also bear in mind that "discovery sanctions are intended to penalize the offending party and deter others from engaging in similar conduct." *Steed v. EverHome Mortgage Co.*, 308 F. App'x 364, 371 (11th Cir. 2009); *see also* Fed. R. Civ. P. 26, Advisory

Committee Notes (1983 Amendment) ("Sanctions to deter discovery abuse would be more effective if they were diligently applied 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'" (quoting *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643 (1976)).

In considering the appropriate sanction in this case, the Court cannot overlook Plaintiffs' dilatory efforts to identify Officer Middleton. As discussed above, after receiving Butts County's responses to Webster's Requests, Plaintiffs did not move to compel or resubmit the Requests to the Sheriff's Department, Defendant Filbeck, or Sheriff Pope. In addition, after receiving the CAD Report in February 2011, Plaintiffs made no attempt to identify the officer whose badge number appeared on the Report until June 11, 2013. The very next day, Plaintiffs discovered Officer Middleton's identity during Sheriff Pope's deposition. Thus, the costs and expenses Plaintiffs incurred to identity Officer Middleton were minimal.[3]

Nevertheless, Attorney Morris' conduct also cannot be overlooked. Attorney Morris had a clear obligation to make a reasonable inquiry into Butts County's responses to Webster's Requests, and to refrain from interposing improper objections. Attorney Morris' testimony during the Sanctions Hearing and supplemental affidavit make clear that Attorney he failed to make a reasonable inquiry as required under Rule 26. As such, the Court finds that the appropriate sanction against Attorney Morris is a $500 fine made payable to the Court. *See Sure Fill & Seal, Inc. v. GFF, Inc.*, No. 08-CV-882, 2010 WL 3125593, at *5 (M.D. Fla. Aug. 4, 2010) (noting that Rule 26(g) authorizes a court to "impose punitive sanctions, such as a monetary fine payable to the court, or a non-monetary directive"). This sanction properly punishes Attorney Morris for failing to comply with his obligations under Rule 26(g), while also deterring similar future misconduct.

---

[3] Because of the minimal expense Plaintiffs incurred in identifying Officer Middleton and because Plaintiffs have not moved for sanctions against Butts County, the Court, in its discretion, declines to sanction Butts County under Federal Rule of Civil Procedure 37 for giving incomplete and incorrect responses to discovery requests. *See Chudasama*, 123 F.3d at 1366 ("District courts enjoy substantial discretion in deciding whether and how to impose sanctions under Rule 37.")

### B.   Conceal Sergeant Mundy's Whereabouts and a Known Conflict

Plaintiffs contend that Attorney Morris acted in bad faith and disrupted this litigation by concealing the whereabouts of Sergeant Mundy. The Court disagrees. As discussed above, the record is devoid of any evidence that Attorney Morris affirmatively represented to Plaintiffs' counsel that he represented all law enforcement personnel in this matter. Rather, the record reflects that Attorney Morris offered to assist Plaintiffs, as a professional courtesy, in locating Mundy because he had represented him in a prior, unrelated lawsuit. Although Attorney Morris undertook multiple efforts to locate Mundy's contact information, ultimately he was unable to do so. There was no evidence presented during the Sanctions Hearing, and there is nothing in the record, indicating that Attorney Morris acted in bad faith with regard to Mundy's contact information or location.

Plaintiffs further contend that their case has been hampered because Attorney Morris knew, based on an earlier conversation around the time of the commencement of this case, that he had a conflict with representing Mundy in this case. Although there would have been a conflict had Attorney Morris actually represented Mundy, he did not do so. Mundy was provided separate legal counsel during his deposition, and he testified that he had no contact with Attorney Morris following their conversation regarding the unrelated case. (Doc. 43 at 48:7-15.) Plaintiffs have cited no authority requiring Attorney Morris to disclose a *possible* conflict with representing a *potential* witness. Accordingly, Plaintiffs have failed to establish that sanctions are warranted against Attorney Morris for his conduct with respect to Mundy.

### CONCLUSION

Based on the forgoing, Plaintiffs' Motion for Sanctions (Doc. 25) is **GRANTED** in part and **DENIED** in part. If this case proceeds to trial, the Court will provide the jury with the appropriate instructions regarding Defendant Filbeck's spoliation of the original January 30, 2011 Report and Plaintiffs' camera. In addition, Defendant Filbeck is **ORDERED** to reimburse Plaintiffs for the reasonable expenses and fees incurred in connection with this Motion. Within **twenty-one (21) days** of the date of this Order, Plaintiffs shall file the appropriate brief and supporting documentation regarding the expenses and fees incurred in connection with this Motion. Within **fourteen (14) days** thereafter, Defendant Filbeck shall

file his opposition and any supporting documentation. Plaintiffs will have **seven (7) days** to reply. If necessary, the Court will set a hearing to determine the appropriate amount of fees and costs.

Having determined that sanctions are warranted in this case, the Court feels compelled to comment on the deplorable conduct exhibited by the attorneys for Plaintiffs and Defendants throughout this litigation. During depositions, the attorneys repeatedly raised impermissible objections in violation of Federal Rule of Civil Procedure 30. In fact, during one deposition, counsel even required the Court to intervene. During written discovery, defense counsel failed to comply with his obligations under Rule 26. Counsels' behavior during the Sanctions Hearing was even more egregious, especially Plaintiffs' counsel's ill-advised decision to attempt to physically drag Attorney Morris to the podium. This behavior required the Court to repeatedly admonish the attorneys to conduct themselves in a civil and profession manner.

"The Federal Rules of Civil Procedure were adopted in 1937 in the hope of securing 'the just, speedy, and inexpensive determination of every action.'" *Malautea*, 987 F.2d at 1546 (quoting Fed. R. Civ. P. 1). "The discovery rules in particular were intended to promote the search for truth that is the heart of our judicial system. However, the success with which the rules are applied toward this search for truth greatly depends on the professionalism and integrity of the attorneys involved." *Id.* It is therefore appalling when attorneys, like the ones in this case, patently disregard the discovery rules and compromise their professionalism for the sake of their clients. As one court opined:

> Discovery is not a game of cat and mouse, of continual pursuit and near capture by one party and endless escape by the other. It is intended to be a self-executing, extrajudicial exercise that depends upon the parties' careful attention to and compliance with the rules. Judicial involvement should be reserved for those genuine disputes that infrequently occur about the scope of discovery or some asserted privilege. But far too frequently courts are forced to deal with dawdling, foot-dragging, discourteous, or mean-spirited litigants or counsel about petty disputes that could have been avoided had counsel simply lived up to their clear obligations under the rules.

*King v. Dillon Transp., Inc.*, No. 11-CV-028, 2012 WL 592191, at *3 (S.D. Ga. Feb. 22, 2012).

What the Court finds most disturbing about this case, however, is that the Parties and their counsel appear totally unwilling to be forthcoming with each other and the Court. Attorneys are officers of the court, and as such "owe duties of complete candor and primary loyalty to the court before which they practice. An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly." *Malautea*, 987 F.2d at 1546. Of course, the Court does not mean to deter a litigant or their counsel from advancing any claim or defense arguably supported by law or fact. However, the undersigned expects counsel to conduct themselves with candor, professionalism, and civility and avoid the disruption and manipulation of the discovery process. Given the conduct exhibited during this litigation, the attorneys are encouraged to review the Federal Rules of Civil Procedure, this Court's Local Rules, and the Georgia Rules of Professional Conduct.

     **SO ORDERED**, this 31st day of March, 2016.


                */s/ Leslie J. Abrams*
                **LESLIE J. ABRAMS, JUDGE**
                **UNITED STATES DISTRICT COURT**